STATE OF MAINE                          BUSINESS & CONSUMER COURT
CUMBERLAND, ss.                         CIVIL ACTION
                                        DOCKET NO. BCD-CIV-2022-00025


EASTERN MAINE MEDICAL          )
CENTER, et al.,                )
                               )
            Plaintiffs,        )
                               )
                               )       ORDER GRANTING
      v.                       )       DEFENDANTS' MOTIONS
                               )       TO DISMISS
                               )
TEVA PHARMACEUTICALS           )
USA, INC., et al.,             )
                               )
            Defendants.        )

## INTRODUCTION

Ostensibly, this case raises the question of whether a group of hospitals in Maine can recover damages against companies operating throughout the pharmaceutical supply chain, as compensation for budget overruns and other injuries related to the increased cost of doing business as medical care providers during the ongoing opioid crisis in the State of Maine. In actuality, the case tests the application of Maine's pleading requirements to a complaint that is decidedly not "short and plain." Eastern Maine Medical Center, The Aroostook Medical Center, The Blue Hill Memorial Hospital, Charles A. Dean Memorial Hospital, Inland Hospital, Maine Coast Regional Health Facilities, Mercy Hospital, MRH Corp., and Sebasticook Valley Health (collectively, the "Plaintiffs") have filed a 505 page Complaint wherein they seek compensatory damages, treble and punitive damages, restitution, and other equitable relief. [1] Each Plaintiff is a non-profit

---

[1] The Complaint purports to set out six counts. Count I is for common law negligence, and includes claims of negligent marketing and distribution. (Compl. ¶¶ 1728-1763.) Count II alleges common law nuisance and violation of 17 M.R.S. § 2701 (2022). (Compl. ¶¶ 1764-1786.) Count III alleges unjust enrichment. (Compl. ¶¶ 1787-1799.) Count IV includes claims of fraud and negligent misrepresentation. (Compl. ¶¶ 1800-1824.) Count V pleads fraudulent concealment. (Compl. ¶¶ 1825-1833.) Finally, Count VI alleges civil conspiracy. (Compl. ¶¶ 1834-1847.)

corporation that operates a hospital in the State of Maine. (Compl. ¶¶ 36-44.) Each of Plaintiffs' causes of action are pled against numerous defendants, grouped according to their role in the pharmaceutical supply chain: Sales Representative Defendants[2]; Marketing Defendants and Associates[3]; Distributor Defendants[4]; and Pharmacy Defendants[5].

The Sales Representative Defendants, Marketing Defendants, Distributor Defendants, and Pharmacy Defendants each filed a Motion to Dismiss Plaintiffs' Complaint under Maine Rule of Civil Procedure 12(b)(6). The Court heard oral argument on each of the respective motions on December 12, 2022. For the reasons discussed below, Plaintiffs' Complaint is DISMISSED in its entirety and as to each named defendant.

## STANDARD OF REVIEW

---

[2] The Complaint names four individual sales representative defendants, each of whom is a natural person residing in the State of Maine: Jeff Saucier, Marc Blattstein, Jason Nagel, and Frank Neel. (Compl. ¶¶ 96-100.) The Court dismissed Plaintiffs' claims against Nagel and Neel by the Order dated December 13, 2022. Similarly, all claims against Blattstein were dismissed by this Court's Order dated January 25, 2023.

[3] The Complaint names the following marketing defendants: Teva Pharmaceutical Industries, Ltd.; Teva Pharmaceuticals USA, Inc.; Cephalon, Inc.; Watson Laboratories, Inc; Actavis, LLC; Actavis Pharma, Inc; Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Endo Pharmaceuticals, Inc.; Endo Health Solutions, Inc.; Par Pharmaceutical, Inc.; Par Pharmaceuticals Companies, Inc.; Allergan plc; Allergan Finance, LLC; Allergan Sales, LLC; Allergan USA, Inc.; AbbVie, Inc.; Mallinckrodt LLC; Mallinckrodt plc; SpecGx LLC; Purdue Pharma, L.P.; Purdue Pharma, Inc.; and The Purdue Frederick Company. (Compl. ¶¶ 45-107.) The Sales Representative Defendants are included among the Marketing Defendants. (Compl. ¶¶ 96-100, 107.) In their motion, the Marketing Defendants refer to themselves collectively as the "Manufacturer Defendants." (Marketing Defs.' Mot. Dismiss 1.) Consistent with the Complaint, the Court refers to this suite of defendants as the "Marketing Defendants" herein. Johnson & Johnson and Janssen Pharmaceuticals, Inc. also filed a separate Motion to Dismiss, which the Court decides with the other defendants' motions. On August 17 and 18, 2022, this case was stayed as to Endo Health Solutions, Inc., Endo Pharmaceuticals, Inc., Par Pharmaceuticals, Inc., and Par Pharmaceutical Companies, Inc., as well as to their affiliated sales representative, Jeff Saucier.

[4] The named Distributor Defendants are: AmerisourceBergen Drug Corporation; Xcenda L.L.C.; Anda, Inc.; Cardinal Health, Inc.; H.D. Smith, LLC; McKesson Corporation; Walgreen Co.; Walgreen Eastern Co., Inc.; CVS Health Corporation; CVS Pharmacy, Inc.; CVS Orlando FL Distribution, L.L.C.; CVS TN Distribution, L.L.C.; Rite Aid of Maine, Inc.; Rite Aid of Maryland, Inc.; P.J.C. Distribution, Inc.; Eckerd Corporation; Walmart Inc.; and Wal-Mart Stores East, LP. (Compl. ¶¶ 108-155.) The Distributor Defendants' Motion to Dismiss was filed by AmerisourceBergen Drug Corporation, Cardinal Health, Inc., and McKesson Corporation, and was subsequently joined by Xcenda, L.L.C., Anda, Inc., and H.D. Smith, LLC.

[5] The "Pharmacy Defendants" are among the Distributor Defendants in the Complaint, but they are distinguished by their separately filed Motion to Dismiss. The "Pharmacy Defendants" grouping includes: Walgreen Co.; Walgreen Eastern Co., Inc.; CVS Pharmacy, Inc.; CVS Orlando FL Distribution, L.L.C.; CVS TN Distribution L.L.C.; Rite Aid of Maine, Inc.; Rite Aid of Maryland, Inc.; P.J.C. Distribution, Inc.; Eckerd Corporation; Walmart, Inc.; and Wal-Mart Stores East, LP. (Pharmacy Defs.' Mot. Dismiss 1 n.1.)

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of the complaint and does not probe the merits of the underlying case." *Carey v. Bd. of Overseers of the Bar*, 2018 ME 119, ¶ 19, 192 A.3d 589 (internal quotation marks omitted). In reviewing a motion to dismiss, courts must "consider the facts in the complaint as if they were admitted." *Bonney v. Stephens Mem. Hosp.*, 2011 ME 46, ¶ 16, 17 A.3d 123 (citing *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830). The complaint is viewed "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* (quotation marks omitted).

Although Maine's notice pleading requirements are forgiving, *Desjardins v. Reynolds*, 2017 Me 99, ¶ 17, 162 A.3d 228, a complaint must allege facts sufficient to demonstrate that a plaintiff has been injured in a legally cognizable way. *America v. Sunspray Condo. Ass'n*, 2013 ME 19, ¶ 20, 61 A.3d 1249 (quoting *Burns v. Architectural Doors & Windows*, 2011 ME 61, ¶ 17, 19 A.3d 823). Additionally, while the material allegations of the complaint must be taken as admitted, the Court "is not bound to accept the complaint's legal conclusions." *Seacoast Hangar Condo. II Ass'n. v. Martel*, 2001 ME 112, ¶ 16, 775 A.2d 1166 (citations omitted). Conclusory factual statements, even if taken as true, are insufficient to avoid dismissal if a plaintiff fails to allege actual facts to make out a claim. *Carey*, 2018 ME 119, ¶ 23, 192 A.3d 589 (citation omitted). "Dismissal is warranted when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that he might prove in support of his claim." *Bonney*, 2011 ME 46, ¶ 16, 17 A.3d 123 (quotation marks omitted).

More rigorous pleading requirements apply to causes of action sounding in fraud. M.R. Civ. P. 9(b). Allegations of fraudulent misconduct must be stated with particularity. *Picher v. Roman Catholic Bishop of Portland*, 2013 ME 99, ¶ 2, 82 A.3d 101. This requirement is satisfied

when the pleadings allow the defendants to be "fairly apprised of the elements of the claim" against them. *Stevens v. Bouchard*, 532 A.2d 1028, 1030 (Me. 1987).

FACTUAL ALLEGATIONS

Plaintiffs' Complaint is comprised of approximately 505 pages comprised of some 1,727 paragraphs. It is not a "short and plain statement" of Plaintiffs' claims. M.R. Civ. P. 8(a). Most of the allegations read like a newspaper or magazine article and reprise national conditions; very few of them concern specific actions of the Defendants in Maine. The Court cannot accept as admitted Plaintiffs' prolix, "time-and-topic-shifting" allegations about historical activities that occurred outside of Maine that are without "legal significance" in this case. *See Meridian Med. Sys., LLC v. Epix Therapeutics, Inc.*, 2021 ME 24, ¶¶ 3-4, 250 A.3d 122. Additionally, almost every allegation linked to Maine is conclusory, and generally assert similar things happened in Maine.[6] Sifting these allegations from the Complaint, the Court accepts the following material facts as admitted for the purpose of deciding Defendants' motions. *See Lalonde v. Cent. Me. Med. Ctr.*, 2017 ME 22, ¶ 2, 155 A.3d 426.

Consumption of opioids poses significant health risks, including addiction and physiological disfunction and decline from long-term use. (Compl. ¶ 166.) The State of Maine is supersaturated with opioids and has been for many years. (Compl. ¶ 8.) Rural Maine counties are among the first areas where opioid abuse reached "epidemic" levels. (Compl. ¶¶ 13-15.) The Maine State Legislature responded to the state's opioid epidemic with legislation to enable monitoring

---

[6] Plaintiffs' Complaint is also excessive when compared to statements of material fact filed with a motion for summary judgment under Maine Rule of Civil Procedure 56, which must be "short, and concise." M.R. Civ. P. 56(h)(1). Under the summary judgment standard, it is the responsibility of the moving party to direct the court to specific contents in the record; the court has no responsibility to canvas the record to locate evidentiary support. M.R. Civ. P. 56(h)(4); *Janusz v. Bacon*, 2022 ME 57, ¶ 8, 285 A.3d 288 ("[t]he moving party has the burden to properly put the material facts before the court, or the motion cannot be granted") (citation and internal quotation marks omitted). This principle applies by analogy to the motion to dismiss standard too. It was the responsibility of the Plaintiffs to extract and highlight the Maine-specific allegations from the hundreds of pages and paragraphs that comprise the Complaint, and to tie them to their claims.

opioid prescription practices and abatement of overprescribing opioids. (Compl. ¶¶ 26-28.)

Plaintiffs operate hospitals in Maine that provide acute care, including treatment of opioid-dependent patients and patients suffering from opioid-related conditions. (Compl. ¶¶ 1, 20, 36-44.) Care provided to these patients is not fully covered by private or government insurance and is generally more costly to provide than the care sought by patients who present without drug addiction. (Compl. ¶¶ 19-20.) However, as hospital operators, Plaintiffs are legally compelled to treat opioid affected patients. (Compl. ¶¶ 1, 591.)

Defendants' businesses are, in part, involved in the manufacture, marketing, distribution, or dispensing of prescription opioids. (Compl. ¶¶ 48, 50, 59, 68-70, 83, 88-89, 93, 97-100, 102-103, 105, 108, 110-112.) They are licensed to perform these activities in Maine by the Maine Board of Pharmacy. (Compl. ¶¶ 494, 497-498.) As licensees, Defendants are required to implement various safeguards to prevent diversion from the opioid supply chain in Maine. (Compl. ¶¶ 492-499.)

Defendants' business in Maine is comprised of the sale, shipment, and dispensing of prescription opioids. (Compl. ¶¶ 2, 9.) For example, the DEA reported that the Defendants distributed and dispensed hundreds of millions of hydrocodone and oxycodone pills as well as generic opioids that were delivered to Maine prescribers between 2006 and 2014. (Compl. ¶¶ 9, 490.) To increase sales of their opioid products within the state, Defendants employed sales representatives and utilized speakers, front groups, continuing medical education programs, and other platforms to reach Maine prescribers and advocate for opioid use to treat chronic pain. (Compl. ¶¶ 270, 301, 320, 372, 377, 413.)

Plaintiffs (through their medical staffs) not only prescribe opioids, but also treat patients complaining of opioid-related conditions. (Compl. ¶ 602.) As a result, Plaintiffs endured a "broad

range" of operational impacts. (Compl. ¶ 1757-1759, 1770-1771.) For example, many of Plaintiffs' patients presenting with opioid-related conditions require novel treatment on an inpatient basis, which imposes extra costs on Plaintiffs. (Compl. ¶ 592.) Hence, Plaintiffs obtain a lower rate of realization for care provided to them. (Compl. ¶ 604.) These cost overruns diminish or wipe-out Plaintiffs' profits from year to year, which are realized from the rates of payment Plaintiffs previously negotiated with insurers and other payors. (Compl. ¶ 592.)

A second cost overrun results from Plaintiffs' inability to rely on opioid-addicted patients to self-report their opioid prescriptions and use, and the emergent need to independently verify those prescriptions. (Compl. ¶ 595.) This need is also responsive to the fact that many of Plaintiffs' patients present for care or treatment in an effort to obtain opioids through Plaintiffs. (Compl. ¶ 605.) Related to this segment of patients, Plaintiffs undertook the costs of hiring security personnel, providing treatment, rehabilitation and social services, and training staff in the application of naloxone. (Compl. ¶¶ 607a-n.) A third cost overrun results from Plaintiffs' obligation under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, that requires them to provide care to anyone seeking treatment for a medical condition and prevents transfer or discharge of patients needing emergency treatment for an opioid-related condition. (Compl. ¶ 596.)

## DISCUSSION

The Court acknowledges the devastation associated with the opioid crisis. This devastation is especially pronounced in the State of Maine. *See* Maine Drug Data Hub, https://mainedrugdata.org/ (last visited Jan. 25, 2023). Notwithstanding these dire circumstances, here the Court must apply the prevailing law to the facts in consideration of Plaintiffs' claims.

    I. *Plaintiffs' claims cannot proceed because the Defendants' alleged misconduct did not proximately cause the Plaintiffs' injuries.*

Each of the Plaintiffs' claims sounds in tort and requires proof of causation, and specifically proximate causation. *See, e.g., Houde v. Millett*, 2001 ME 183, ¶ 10, 787 A.2d 757 ("In order to recover for damages in a cause of action for negligence or for any other tort, a plaintiff must establish that 'there be some reasonable connection between the act or omission of the defendant'" and the plaintiff's injury.) (quoting *Crowe v. Shaw*, 2000 ME 136, ¶¶ 8-9, 755 A.2d 509). Proximate cause is "that cause which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury, and without which the result would not have occurred." *Merriam v. Wanger*, 2000 ME 159, ¶ 8 n.1, 757 A.2d 778 (citations and quotation marks omitted). In other words, the defendant's misconduct must be a substantial factor in bringing about or actually causing the injury, and the injury must be either a direct result or reasonably foreseeable consequence of the misconduct. *Id.* (citations omitted).

However, "the mere possibility of such causation is not enough," and the analysis favors a defendant when the matter remains one of pure speculation or conjecture, or when "the probabilities are evenly balanced." *Id.* Under those circumstances, the court may dismiss a claim if the plaintiff's allegations amount to mere speculation or conjecture. *See id.* ¶ 10 (citations omitted). Those are the circumstances here. The Court finds that Plaintiffs' allegations as to causation are too attenuated to prove up this vital element.[7] Additionally, there are far too many

---

[7] During oral argument, Plaintiffs sought to cure the Complaint's causation deficit by arguing theories of "aggregate proof" of causation and damages. That concept is most frequently applied to class action litigation involving securities, antitrust, RICO, or employment discrimination claims. Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 97 (Apr. 2009). It "seeks to trigger the application of substantive doctrine in such a way as to suggest a common, … wrong attributable to the defendant." *Id.* at 101. In other words, use of "aggregate proof" presupposes the plaintiffs or defendants as a unit "and, from that vantage point, seeks to trigger an inference concerning the situation of each [plaintiff or defendant] individually under applicable law." *Id.* at 115. But this is not class action litigation with the concomitant question of commonality, in which such presuppositions may be appropriate. The Court recognizes that in other forums claims regarding opioid misuse and diversion similar to Plaintiffs' have proceeded under theories of "aggregate proof," for example in the Opioid MDL 2804 overseen by Judge Aaron Polster. *See City of Huntington v. AmerisourceBergen Drug Corp.*, Nos. 3:17-01362, 3:17-01665, 2021 U.S. Dist. LEXIS 82371, at *6, 10-12 (Apr. 29, 2021). However, this Court decides the motions at issue according to Maine law, under which there is no apparent support for this approach and which requires nexus between each defendant's misconduct and each plaintiff's injuries. *See Crowe*, 2000 ME 136, ¶¶ 8-9, 755 A.2d 509. Plaintiffs'

intervening events and actors (such as pharmacies unaffiliated with Plaintiffs or any of the Defendants, affiliated and unaffiliated physicians and other practitioners, patients, and criminal actors) involved during the many years at issue to permit a reasonable inference that Plaintiffs' injuries are the natural result of the Defendants' purported misconduct. *See Ames v. Dipietro-Kay Corp.*, 617 A.2d 559, 561 (Me. 1992).

## II. *The harm pled by Plaintiffs is too speculative to be cognizable at law.*

During oral argument, Plaintiffs characterized their theory of recovery as one based on aggregate proof of injury. Legally cognizable, actual injury is another necessary element of tort claims. *See In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 2010 ME 93, ¶ 8, 4 A.3d 492. Here, Plaintiffs invoke numerous cost and budget overruns they allege result from their treatment of patients suffering opioid-related conditions. But these invocations rely on conclusory allegations without factual support. As pled in the Complaint, these injuries are too speculative to be cognizable. *See Chapman v. Drake*, 545 A.2d 645, 649 (Me. 1988). First, apart from the absence in the Complaint of facts alleged to prove Plaintiffs' expenditures to prevent and reduce improper prescriptions and address the risks and needs posed by opioid-addicted patients, time and effort expended to avoid such foreseeable harm is not a cognizable injury under Maine law. *See In re Hannaford Bros. Co.*, 2010 ME 93, ¶ 11, 4 A.3d 492.

A second issue underlies Plaintiffs' acknowledgement that their alleged lost profits damages are based, at least in part, on rates of compensation previously negotiated with insurers and third-party payors. (Compl. ¶¶ 592, 596.) Yet, hospital providers are reimbursed for their inpatient hospital services by payors like Medicare and MaineCare. *See* 42 U.S.C. § 1395ww (2022) (Medicare); 10-144 C.M.R. ch. I, §§ 1.03-1, 1.08 (2022) (MaineCare). Plaintiffs do not

---

reliance on "aggregate proof" is not a means for the Court to accept otherwise conclusory allegations as adequate pleadings in a case which is not a class action.

provide any basis to parse unreimbursed health care provided to their patients. Moreover, balance billing is generally not permitted. *See* 42 U.S.C. § 1395cc(a)(1)(A)(i) (2022) (Medicare); 42 C.F.R. § 447.15 (2023) (MaineCare through Medicaid). Thus, even if there were an adequately pled basis for distinguishing Plaintiffs' injuries through calculation of their cost overruns on a patient-by-patient basis, Plaintiffs cannot recover expenditures related to inpatient services and care where they have already accepted agency payments as compensation, and as "payment in full" no less.

### III. Plaintiffs' negligence and negligent misrepresentation claims also fail as a matter of law because Defendants owed no duty to the Plaintiffs.

In Maine, to establish a claim of negligence a plaintiff must allege a duty owed by the defendant, and a breach thereof by the defendant that caused the plaintiff damages. *McIlroy v. Gibson's Apple Orchard*, 2012 ME 59, ¶ 8, 43 A.3d 948. Like negligence, the tort of negligent misrepresentation requires the defendant to be dutybound through the course of their business, profession or employment, "or in any other action in which he has a pecuniary interest" in which context the alleged misrepresentation is made. *Rand v. Bath Iron Works Corp.*, 2003 ME 122, ¶ 13, 832 A.2d 771 (citations omitted). Except when a special relationship exists between the parties, there is no common law duty or general obligation to protect another from the actions of third parties. *DeCambra v. Carson*, 2008 ME 127, ¶¶ 11-12, 953 A.2d 1163.

Here, Plaintiffs' injuries are derivative of harms endured by third-parties in aggregate. Defendants owed no general duty of care to Plaintiffs to prevent such harm.[8] *See id.* ¶ 11. Likewise, the parties are not involved in any special, fiduciary relationship from which a duty would arise. *See id.* ¶ 13. Nor are the Defendants under any obligation for the benefit of any of the Plaintiffs. *See Trusiani v. Cumberland & York Distribs., Inc.*, 538 A.2d 258, 261 (Me. 1988). Absent

---

[8] Apart from the common law, Defendants are liable for a breach of their statutorily imposed duties under the Maine Pharmacy Act. 32 M.R.S. §§ 13731, 13758 (2022). However, in this context the Maine Pharmacy Act imposes civil penalties and fines but does not provide a cause of action for damages.

establishment of any such duty of care, none of Plaintiffs' claims based on theories of negligence can proceed. Count I and the negligent misrepresentation claim contained in Count IV must be dismissed.

### IV. Plaintiffs' nuisance claims fail as a matter of law because there is no public right at issue, and no special injury distinguished by the Complaint.

A public nuisance involves an unreasonable interference with a right common to the general public. *Higgins v. Huhtamaki, Inc.*, No. 1:21-cv-00369-NT, 2022 U.S. Dist. LEXIS 111062, at \*24 (D. Me. 2022). A private plaintiff may complain of a public nuisance only when they can show a special and peculiar injury greater than that sustained by the general public. *Id.*; *Charlton v. Town of Oxford*, 2001 ME 104, ¶ 27, 774 A.2d 366. A plaintiff's injury is special and peculiar relative to the general public's when it is "different in kind rather than simply in degree." *Higgins*, 2022 U.S. Dist. LEXIS 111062, at \*26; *Foley v. H.F. Farnham Co.*, 135 Me. 29, 31, 188 A. 708, 710 (1936).

First, the public's health may encompass "public rights," but is too abstract and broad a concept to supply an actionable public right in tort. Plaintiffs cannot conclusively declare such a public right. Likewise, none of the Plaintiffs' claimed injuries are distinguishable from those theoretically endured by other institutions in Maine that serve the public welfare, such as first responders, or individuals who do business with or care for opioid-affected persons, such as landlords and family members. Finally, the Plaintiffs' claimed injuries are derivative of harms suffered by third-parties—their patients, who are members of the public. These injuries are not different in kind from the non-physical injury endured by Plaintiffs' patients in their obligation to pay for health care services they received when presenting to providers for care related to opioid-related symptoms. Without an adequately pled public right or special injury, Plaintiff's nuisance claim fails as a matter of law, and Count II must be dismissed.

*V. Plaintiffs' unjust enrichment claim fails as a matter of law because they do not allege a concrete profit, gain, advantage, or privilege enjoyed by Defendants.*

To properly claim unjust enrichment, the complaining party must allege that "(1) it conferred a benefit on the other party; (2) the other party had appreciation or knowledge of the benefit; and (3) the acceptance or retention of the benefit was under such circumstances as to make it inequitable for it to retain the benefit without payment of its value." *Knope v. Green Tree Servicing, LLC*, 2017 ME 95, ¶ 12, 161 A.3d 696 (citation and quotation marks omitted). Damages for unjust enrichment are measured by the value of the defendant's enrichment, or in other words by what the defendant inequitably retained. *Paffhausen v. Balano*, 1998 ME 47, ¶ 7, 708 A.2d 269 (distinguishing unjust enrichment from quantum meruit).

The gist of the benefit Plaintiffs claim they conferred to the various Defendants is that Plaintiffs (1) provided unreimbursed treatment, often at increased costs, to patients with opioid-related conditions, because (2) Defendants are responsible for causing patients' misuse that led to those conditions by marketing, distributing, and dispensing an unreasonably high number of opioids into the communities the Plaintiffs serve. (Compl. ¶ 1790.) According to the Plaintiffs, Defendants benefited where they did not have to bear the additional expenses Plaintiffs incurred in treating opioid-affected patients, providing extended inpatient care, and responding to the conditions generated by the opioid crisis. (Compl. ¶ 1791.) But Plaintiffs allege no facts indicating how the Defendants actually benefited from Plaintiffs' undertaking to treat opioid-affected patients. *See Forrest Assocs. v. Passamaquoddy Tribe*, 2000 ME 195, ¶ 15, 760 A.2d 1041.

There is no concrete profit, gain, advantage, or privilege enjoyed by Defendants that resulted directly from Plaintiffs' treatment of patients presenting with opioid-related conditions. Absent adequate allegations to that effect, Plaintiffs' Count III does not state a claim upon which relief can be granted. Accordingly, it is dismissed in its entirety.

*VI. Plaintiffs do not adequately plead their fraudulent misrepresentation and fraudulent concealment claims.*

As noted above, Maine law requires the elements of claims sounding in fraud to be pled with particularity. M.R. Civ. P. 9(b). This means that a plaintiff must adequately allege the facts of "who, what, when, where, and how" underlying the frauds complained of. *See Lawton, ex rel. United States v. Takeda Pharm. Co.*, 842 F.3d 125, 130 (1st Cir. 2016) (applying Fed. R. Civ. P. 9(b)); *State v. Petit*, No. CV-97-059, 1997 Me. Super. LEXIS 258, at *2 (Aug. 28, 1997) (relying on federal case law applying Fed. R. Civ. P. 9(b) in applying M.R. Civ. P. 9(b)). The Complaint is bare of such facts as to each instance of fraudulent misrepresentation and concealment averred against each of the Defendants. It merely places certain of Defendants' activities "in Maine." The Court cannot, and does not, accept the Plaintiffs' sweeping and general allegations as to the Defendants' purported fraudulent misconduct. The Complaint does not identify any specific statement made to any of the Plaintiffs, nor when or by whom. Absent allegations of facts that would flesh out specific instances of fraudulent misrepresentation or concealment directed towards the Plaintiffs, Plaintiffs' fraud claims fail as a matter of law. Counts IV and V must also be dismissed.

*VII. Absent another viable tort claim, Plaintiffs' civil conspiracy claim cannot proceed.*

Under Maine law, there is no independent tort for "conspiracy." *Meridian Med. Sys., LLC*, 2021 ME 24, ¶ 10, 250 A.3d 122 (citation omitted). However, "conspiracy" is properly pled to extend liability to "[a]ll those who, in pursuance of a common plan or design, commit a tortious act." *Cohen v. Bowdoin*, 288 A.2d 106, 111 (Me. 1972) (citation omitted). Thus, "absent the actual commission of some independently recognized tort, a claim for civil liability for conspiracy fails" as a matter of law. *Potter, Prescott, Jamieson & Nelson, P.A. v. Campbell*, 1998 ME 70, ¶ 8, 708 A.2d 283.

As discussed above, Plaintiffs' do not successfully plead "the actual commission of some independently recognized tort." Absent adequate allegations to that effect, Plaintiffs' Count VI does not state a claim upon which relief can be granted. Accordingly, it is dismissed in its entirety.

<u>CONCLUSION</u>

Based on the foregoing, the entry will be: Defendants' Motions to Dismiss are GRANTED. Plaintiffs' Complaint is DISMISSED as to each Defendant and in its entirety.

The Clerk is instructed to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).

So Ordered.

Dated: __**02/13/2023**__

_____
Michael A. Duddy
Judge, Business & Consumer Court

Entered on the docket: 02/13/2023

13